<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IGOR VEDERNIKOV,

             Plaintiff,

        v.

ATLANTIC CREDIT & FINANCE, INC. &
MIDLAND FUNDING, LLC,

             Defendants.

IGOR VEDERNIKOV,

             Plaintiff,

        v.

OLIPHANT FINANCIAL, LLC,

             Defendant.

**MEMORANDUM OPINION**

Civil Action No. 18-15273 (MAS) (TJB)

Civil Action No. 18-17365 (MAS) (DEA)

<u>**SHIPP, District Judge**</u>

    This matter comes before the Court upon the Court's review of the parties' submissions in response to the Court's Order to Show Cause ("OTSC") in *Vedernikov v. Atlantic Credit & Finance, Inc. & Midland Funding, LLC* (*Vedernikov I*), No. 18-15273 (D.N.J.), and *Vedernikov v. Oliphant Financial, LLC* (*Vedernikov II*), No. 18-17365 (D.N.J.). (*Vedernikov I*, ECF No. 23; *Vedernikov II*, ECF No. 15.) Plaintiff Igor Vedernikov ("Vedernikov") responded. (*Vedernikov I*, ECF No. 24; *Vedernikov II*, ECF No. 16.) In *Vedernikov I*, Defendants Atlantic Credit & Finance, Inc. ("Atlantic Credit") and Midland Funding, LLC ("Midland") (collectively,

"*Vedernikov I* Defendants") responded.  (*Vedernikov I*, ECF No. 25.)[1]  The Court has carefully

considered the parties' submissions.  For the reasons set forth below, *Vedernikov I* and *Vedernikov*

*II* are dismissed with prejudice.

## I.    BACKGROUND

On October 8, 2018, Vedernikov filed a voluntary Chapter 7 bankruptcy petition in the

United States Bankruptcy Court for the District of New Jersey. (*See* Bankr. Pet., *In re Vedernikov*,

No. 18-30011, ECF No. 1 (Bankr. D.N.J.).)  Vedernikov's Chapter 7 bankruptcy petition included

several schedules. (*See generally id.*)  On Schedule A/B: Property, Vedernikov indicated he had

no claims against third parties, however, he also listed a "Potential FDCPA[2] Violation Claim

Against an entity collecting on a debt of another" valued at $1,000 under other property interests

(line 53). (*Id.* at 13, 15.)[3]  Under Schedule C: The Property You Claim as Exempt, Plaintiff

claimed multiple exemptions. (*Id.* at 16-17.)  Vedernikov identified a single claim under the

FDCPA valued at $1,000 as exempt. (*Id.* at 17.)

On October 24, 2018, Plaintiff initiated *Vedernikov I* by filing a complaint alleging that

*Vedernikov I* Defendants violated the FDCPA. (Compl., *Vedernikov I*, ECF No. 1.)  On December

18, 2018, Vedernikov initiated *Vedernikov II* by filing a Complaint alleging Defendant Oliphant

Financial, LLC ("Oliphant") violated the FDCPA. (Compl., *Vedernikov II*, ECF No. 1.)

---

[1] In *Vedernikov II*, Defendant Oliphant Financial, LLC ("Oliphant") did not file a response to
Vedernikov's response to the OTSC.

[2] The "FDCPA" is the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

[3] For the parties' convenience, when citing to documents filed in *In re Vedernikov*, the Court cites
to the page numbers inscribed in the header of the document by the CM/ECF system.

*Vedernikov I* and *Vedernikov II* are presently before the Undersigned; however, these are not the only FDCPA-based lawsuits Vedernikov filed in the District of New Jersey. In fact, after the initiation of *In re Vedernikov*, Vedernikov filed six other FDCPA-based lawsuits in this district and in each of those matters he is represented by the same counsel. On October 23, 2018, Plaintiff filed suit against LTD Financial Services LP. (Compl., *Vedernikov v. LTD Financial Servs. LP* (*Vedernikov III*), No. 18-15217 (D.N.J.).) On October 24, 2018, Plaintiff filed suit against Diversified Consultants Inc. and Absolute Resolutions Investments LLC. (Compl., *Vedernikov v. Diversified Consultants Inc.* (*Vedernikov IV*), No. 18-15275 (D.N.J.).) On December 12, 2018, Plaintiff filed three separates lawsuits naming RGS Financial, Inc.; Sunrise Credit Services Inc.; and Mercantile Adjustment Bureau as defendants, respectively. (Compl., *Vedernikov v. RGS Financial Inc.*, No. 18-17353 (D.N.J.); Compl, *Vedernikov v. Sunrise Credit Servs., Inc.* (*Vedernikov V*), No. 18-17363 (D.N.J.); Compl., *Vedernikov v. Mercantile Adjustment Bureau LLC*, No. 18-17364 (D.N.J. Dec. 18, 2018).) On January 30, 2019, Plaintiff filed suit against Client Services Inc. (Compl., *Vedernikov v. Client Servs., Inc.*, No. 19-02540 (D.N.J. May 15, 2019).) In *Vedernikov I*, *Vedernikov II*, and the six other matters Vedernikov filed in this district (collectively, the "FDCPA Matters"), Vedernikov asserts two FDCPA claims and the action is a putative class action in which Vedernikov seeks to serve as the lead plaintiff. [4]

On November 2, 2018, in *Vedernikov IV*, Vedernikov filed correspondence stating that the matter had been settled against all defendants. (Correspondence, *Vedernikov IV*, ECF No. 3.) *Vedernikov IV* was dismissed with prejudice on December 27, 2018. (Order, *Vedernikov IV*, ECF No. 8.) On January 18, 2019, in *Vedernikov V*, Plaintiff filed correspondence stating that the matter

---

[4] While Vedernikov is represented by the same counsel in the FDCPA Matters, he is represented by different counsel in *In re Vedernikov*.

had been settled against the sole defendant. (Correspondence, *Vedernikov V*, ECF No. 4.)  On March 25, 2019, *Vedernikov V* was dismissed with prejudice. (Order, *Vedernikov V*, ECF No. 6.)

On November 20, 2018, in his bankruptcy proceeding, Vedernikov filed an amended schedule updating his income. (Schedule, *In re Vedernikov*, ECF No. 11.) Vedernikov's amended schedule did not disclose that Vedernikov had initiated several FDCPA-based lawsuits after filing his initial petition. (*Id.*)  On November 27, 2018, Vedernikov filed an additional update to his petition. (Schedule, *In re Vedernikov*, ECF No. 13.)  Vedernikov's additional filing did not disclose his lawsuits. (*See id.*)

On December 27, 2018, Vedernikov's Chapter 7 Trustee filed a declaration stating Vedernikov's estate had been fully administered and that after a diligent inquiry "there is no property available for distribution from the estate over and above that exempted by law." (Dec. 27, 2018 Docket Entry, *In re Vedernikov*.)  The Trustee discharged $80,139 in claims without payment. (*Id.*)  On February 1, 2019, the Bankruptcy Court discharged Vedernikov's bankruptcy petition. (Order, *In re Vedernikov*, ECF Nos. 16, 17.)  There is no indication that Vedernikov ever informed the Bankruptcy Court or the Trustee regarding the existence of the FDCPA Matters, the claims asserted therein, or the settlements in *Vedernikov IV* and *V*.

On January 11, 2019, the *Vedernikov I* Defendants filed a Motion to Dismiss arguing, *inter alia*, that Vedernikov should be judicially estopped from maintaining the action because of his failure to disclose his FDCPA claims in his bankruptcy schedules. (Defs.' Moving Br. 4, *Vedernikov I*, ECF No. 13.)  After Vedernikov failed to file opposition to the motion, the Court ordered Vedernikov to oppose the motion or the Court would consider the motion unopposed. (Order, *Vedernikov I*, ECF No. 19.)  On June 19, 2019, Vedernikov filed a Motion to Dismiss *Vedernikov I* without prejudice. (*Vedernikov I*, Pl.'s Mot. to Dismiss, ECF No. 20.)  On the same

day, the *Vedernikov I* Defendants opposed Vedernikov's motion (Defs.' Opp'n, *Vedernikov I*, ECF No. 21), and on July 1, 2019, Vedernikov replied (Pl.' Reply, *Vedernikov I*, ECF No. 22). In his Reply Brief, Vedernikov states that his delay in opposing the *Vedernikov I* Defendants' motion "was caused by [the] bankruptcy case having all[]ready been discharged therefore a simple amendment could not [be] filed, but rather permission from the Trustee must be sought. It is important to note that the Plaintiff has enough of 'wild card' [exemption] that this claim would have been exempted from the estate by the Trustee." (*Id.*) Vedernikov's Reply Brief does not affirmatively state that he has sought permission from the Trustee to amend his filings in *In re Vedernikov*. (*Id.*)

In *Vedernikov II*, on March 1, 2019, Oliphant moved for summary judgment. (Def.'s Mot. for Summ. J., *Vedernikov II*, ECF No. 8.) Vedernikov opposed (Pl.'s Opp'n Br., *Vedernikov II*, ECF No. 13), and Oliphant replied (Def.'s Reply Br., *Vedernikov II*, ECF No. 14).

On July 19, 2019, after reviewing the dockets in *Vedernikov I* and *II*, and in *In re Vedernikov*, the Court issued an OTSC requiring Vedernikov to set forth reasons he should not be judicially estopped from maintaining *Vedernikov I* and *II*. (*See* OTSC, *Vedernikov I*, ECF No. 23; OTSC, *Vedernikov II*, ECF No. 15.) The Court was "concerned by Vedernikov's failure, as a debtor, to update his bankruptcy filings to reflect the maintenance of eight individual lawsuits." (*Id.* at 5.)

On August 2, 2019, Vedernikov responded to the OTSC. (Pl.'s Resp., *Vedernikov I*, ECF No. 24; Pl.'s Resp., *Vedernikov II*, ECF No. 16.) On August 6, 2019, *Vedernikov I* Defendants responded to Vedernikov's response. (Defs.' Resp., ECF No. 25.)

## II.    DISCUSSION

Vedernikov advances two primary points in response to the OTSC.   In relation to
*Vedernikov I*, he argues that because he and *Vedernikov I* Defendants seek dismissal of the matter,
he "will receive no monetary award . . . ." (Pl.'s Resp. 2.)  Vedernikov states that he "continues
to explore his right to refile [*Vedernikov I*] and reopen his bankruptcy petition to disclose the same,
should he decide to proceed." (*Id.*)  He insists that the Court should not "usurp" his option to refile
his claim prior to the expiration of the statute of limitations of the claim.  (*Id.*).   In regards to
*Vedernikov II*, Vedernikov argues that dismissal is premature because Oliphant's Motion for
Summary Judgment is pending, and if the Court denies the motion, "it is inevitable that [Oliphant]
will seek leave to appeal" the Court's decision.  (*Id.*)  Thus, it will be "years before [he] actually
receive[s] an award of statutory damages in this matter." (*Id.*)  Vedernikov asserts that there is a
"slim" likelihood that he would be awarded the statutory maximum of $1,000 in damages for his
FDCPA claim and this possibility would leave him within the $1,000 of possible damages he
claimed in his bankruptcy petition.  (*Id.* at 3.)

Vedernikov's response to the OTSC fails to address the Court's concerns.  Vedernikov had
an affirmative and ongoing duty to fully disclose *all* of his assets and liabilities.  *See* 11 U.S.C.
§ 521; *Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x 47, 50 (3d Cir. 2018); *DePasquale v.
Morgan Stanley Smith Barney LLC*, No. 10-6828, 2011 WL 3703110, at *3 (D.N.J. Aug. 23,
2011); *Bosco v. C.F.G. Health Sys.*, No. 04-3517, 2007 WL 1791254, at *3 (D.N.J. June 19, 2007).
Vedernikov's response to the Court's OTSC reasserts his misapprehension of his duty to disclose.
By requesting the Court to dismiss his claim without prejudice, Vedernikov effectively requests
the Court to allow him to hold potential claims in abeyance until such time as he decides whether
to comply with his statutory duty, which was triggered when he filed his bankruptcy petition and

continued through the discharge of the same.

Oliphant's pending motion in *Vedernikov II* has no bearing on Vedernikov's duty to disclose. The fact that Vedernikov's recovery would be limited to the statutory maximum of $1,000 does not diminish his duty to disclose nor the ramifications of his failure to disclose. In reality, the possibility Vedernikov may recover up to the statutory maximum of $1,000 reinforces the view that he should have disclosed the other seven lawsuits he filed. A recovery of $1,000 in each of the lawsuits he brought would have resulted in $8,000 in recovery, eight times the amount Vedernikov disclosed. The Court notes that Vedernikov settled *Vedernikov IV* and *Vedernikov V* on terms which were not disclosed to the Court. Assuming Vedernikov received any funds as part of those settlements, he likely should have disclosed that to his Trustee and those funds may exceed the $1,000 claim he listed in his bankruptcy petition.

Vedernikov's response to the OTSC also fails to address the factors the Court must assess when considering judicial estoppel. While the Court did not cite these three factors in the OTSC, several of the opinions the Court cited in the OTSC enumerate and analyze these three factors. (*See* OTSC 4-5 (citing *Danise*, 738 F. App'x at 50; *Clark v. Strober-Haddonfield Grp., Inc.*, No. 07-910, 2008 WL 2945972 (D.N.J. July 29, 2008) and other cases).) The Court addresses these three factors below.

## A. Legal Standard for Application of Judicial Estoppel

Judicial estoppel is a fact-specific, equitable doctrine, applied at a court's discretion. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Under the doctrine of judicial estoppel, "a plaintiff, who has obtained relief from an adversary by asserting and offering proof to support one position, may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his [or her] earlier contention."

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir.

2003) (citing *Scarano v. Cent. R.R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)). The "doctrine

of judicial estoppel frequently arises in the context of a failure to list a claim as an asset in a

bankruptcy, and the inconsistent pursuit of an undisclosed claim." *Clark*, 2008 WL 2945972, at

*2 (citations omitted).

The Third Circuit has identified three criteria for determining whether judicial estoppel

applies:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith—i.e., with intent to play fast and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*Krystal*, 337 F.3d at 319 (quoting *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d

773, 779 (3d Cir. 2001)); *accord Danise*, 738 F. App'x at 50.

**B.      Vedernikov has Taken Inconsistent Positions**

Judicial estoppel may apply where the party to be estopped has taken two positions that are

"irreconcilably inconsistent." *Montrose*, 243 F.3d at 779 (citing *Ryan Operations G.P. v. Santiam-*

*Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996)). The bankruptcy code imposes on debtors

"an ongoing, affirmative duty to disclose contingent assets to the bankruptcy court." *Coles v.*

*Carlini*, No. 10-6132, 2013 WL 3811642, at *8 (D.N.J. July 22, 2013) (citations omitted); *see also*

11 U.S.C. § 521(a)(1) (listing debtors' duties). If a debtor has enough information prior to

confirmation to suggest that a possible claim exists, then it is a "known" claim that must be

disclosed in the bankruptcy petition. *See Krystal*, 337 F.3d at 323 (citation omitted).

In *In re Vedernikov*, Vedernikov represented that he was aware of a single potential

8

FDCPA claim valued at $1,000. In each of the eight lawsuits comprising the FDCPA Matters, Vedernikov asserted that he had two claims pursuant to the FDCPA. Moreover, despite filing an amended schedule and an additional filing, Vedernikov did not inform the Bankruptcy Court or his Trustee about his FDCPA claims in excess of the single claim identified in his bankruptcy petition. In the end, Vedernikov allowed his bankruptcy petition to be discharged without disclosing that he had numerous additional FDCPA claims. Because Vedernikov maintained in *In re Vedernikov* that he had one FDCPA claim while bringing eight lawsuits asserting two FDCPA claims in each lawsuit, the Court finds that he has taken inconsistent positions.

### C. Vedernikov's Change in Position was in Bad Faith

"[T]he doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court.'" *Ryan*, 81 F.3d at 362 (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980)). "[A] rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." *Krystal*, 337 F.3d at 321 (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416-18 (3d Cir. 1988)). "If a debtor has enough information prior to confirmation of her [or his] bankruptcy plan to suggest that a possible claim exists, then it is a 'known' claim that must be disclosed in the bankruptcy petition." *Danise*, 738 F. App'x at 51.

The Court finds that an inference of bad faith arises from Vedernikov's conduct. First, a comparison of Vedernikov's bankruptcy petition and additional filings in *In re Vedernikov* against his filings in the FDCPA Matters reveals that Vedernikov was aware of his claims during the pendency of his bankruptcy petition. In his bankruptcy petition, Vedernikov lists unsecured claims asserted by the following creditors, among others: Absolute Resolutions Corp.; Barclays Bank

Delaware; Midland; Oliphant Financial; and SYNCB/PC Richard. (Bankr. Pet. 20-24, *In re Vedernikov.*) In *Vedernikov I,* Vedernikov complains of a July 24, 2018 collection letter sent by Atlantic Credit attempting to collect a debt on behalf of Midland in regard to a debt Plaintiff incurred to Synchrony Bank for a PC Richard account. (Compl. ¶¶ 24-30, *Vedernikov I.*) In *Vedernikov II,* Vedernikov complains of an April 23, 2018 collection letter sent by Oliphant. (Compl. ¶¶ 25-27, *Vedernikov II.*) In *Vedernikov III,* Vedernikov complains of an August 10, 2018 collection letter sent by LTD Financial Services, L.P. on behalf of Barclays Bank. (Compl. ¶¶ 22-28, *Vedernikov III.*) In *Vedernikov IV,* Vedernikov complains of a July 11, 2018 collection letter sent by Diversified Consultants, Inc. on behalf of Absolute Resolutions Investments LLC, the subsequent owner of a debt Plaintiff incurred to WebBank.[5] (Compl. ¶¶ 23-29, *Vedernikov IV.*) In each instance, Vedernikov's bankruptcy petition indicated that he had knowledge of the claim being asserted against him, yet he filed lawsuits related to the collection efforts of those debts without ever mentioning those lawsuits in his bankruptcy proceeding. The Court, accordingly, finds Vedernikov had knowledge of the claims asserted in the FDCPA Matters while his bankruptcy petition was pending.

"[A] person seeking to discharge his [or her] debts in bankruptcy [has] a motive to conceal potential assets . . . ." *Clark,* 2008 WL 2945972, at *3. By shielding the FDCPA Matters from the bankruptcy court, Vedernikov secured a benefit for himself in the bankruptcy proceeding while attempting to protect his interests in the FDCPA Matters. Such behavior runs afoul of

---

[5] In his bankruptcy petition, Vedernikov lists a $736.00 claim by Absolute Resolutions Corp. (Bankr. Pet. 20, *In re Vedernikov.*) Vedernikov attached correspondence from Diversified Consultants, Inc. to his complaint in *Vedernikov IV,* and the correspondence reflects a debt of $736.85 owed to Absolute Resolutions Investments, LLC. (Ex. A., *Vedernikov IV,* ECF No. 1-2.) Based on the similarity in the amount of the debt, the Court assumes Absolute Resolutions Corp. and Absolute Resolutions Investments, LLC are one in the same.

Vedernikov's duties as a debtor and threatens the integrity of the bankruptcy process. Vedernikov's response to the OTSC shows that he fails to comprehend his duty to disclose and would like the Court to simply wait until he decides if he is going to comply with the Bankruptcy Code. This position "assault[s] the dignity or authority of" the Court and the Bankruptcy Court. *Montrose*, 243 F.3d at 781. Finally, the Court notes that in early January 2019, *Vedernikov I* Defendants filed their Motion to Dismiss arguing the Court should apply judicial estoppel. There is no indication that since the specter of judicial estoppel was first raised—seven months ago— that Vedernikov has taken any affirmative action to ensure his conduct was consistent.

### D.     No Lesser Sanction is Appropriate

The doctrine of judicial estoppel is "an extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Ryan*, 81 F.3d at 365 (citations and internal quotation marks omitted). A district court may not employ judicial estoppel unless it is "tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Montrose*, 243 F.3d at 779-80 (internal quotation marks omitted). Although seemingly broad, judicial estoppel is not intended to eliminate any slight or inadvertent inconsistency in a litigant's position; instead, it is reserved for the most egregious cases. *Krystal*, 337 F.3d at 319.

The Court finds no lesser sanction is appropriate. Vedernikov had knowledge of his FDCPA claims during the pendency of his bankruptcy petition yet maintained that he only had one such claim. Shielding his suits from the Trustee may have conferred a benefit upon Vedernikov while denying his creditors the benefit of any recovery he secured via settlement or in a future recovery. The Court cannot ignore the perversity of Vedernikov discharging debt he owed to certain creditors while he was pursuing FDCPA claims against the same creditors for their attempts

to collect the debt he owed.  Tolerating Vedernikov's behavior would send a message to others that "a debtor should consider disclosing potential assets only if he is caught concealing them." *Krystal*, 337 F.3d at 325 (citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)). "Dismissal is necessary to prevent [Vedernikov] from profiting from [his] omission[s].  It is also 'required to preserve the integrity of the [bankruptcy] proceedings.'" *Id.* (quoting *Oneida*, 848 F.2d at 418).

## III.    CONCLUSION

For the reasons set forth above, the Court finds that Vedernikov is judicially estopped from maintaining *Vedernikov I* and *Vedernikov II*.  The Court, accordingly, dismisses those matters with prejudice.  An order consistent with this Memorandum Opinion will be entered.

s/Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** August <u>30</u>, 2019